The Honorable Mark Alan Smith State Representative 4103 Lynn Drive El Dorado, Arkansas 71730-8668
Dear Representative Smith:
This is in response to your request for my opinion on various questions relating to the grant process used by Arkansas Literacy Councils, Inc. ("ALC"), a private nonprofit corporation, for the distribution of certain state grant funds. You indicate in your request that ALC's accountants have characterized as a possible conflict of interests the fact that ALC's Board of Directors, which awards grants to various literacy organizations around the state, includes as members representatives of these potential grantee organizations. According to your request, twelve of the eighteen current directors are affiliated with grantee literacy councils, and various others have been in the past. You report that before 1997, the final determination of grant awards was made by the Governor's Commission on Adult Literacy ("GCAL"), usually pursuant to ALC's recommendations. However, Section 4 of Act 803 of 1997 abolished GCAL and transferred it to the Department of Workforce Education ("DWE") pursuant to A.C.A. § 25-2-106. You further report that the appropriation for ALC's grants and administrative expenditures is an annual line item in the budget for the Department of Education, Adult Education Section, under DWE. To date, DWE has played no part in the process of making and administering grants.
In your request, you have listed the following as pertinent to the process of awarding grants:
 1. The board establishes grant application policies and procedures, application forms, etc., with the assistance of staff.
 2. Announcements of the grant process are distributed to the literacy councils.
 3. The ALC Executive Director and staff perform an initial review of the grant applications, summarize the financial requests and make recommendations to the ALC board on the allocation of the grant funds.
 4. The ALC Executive Committee, which normally includes representatives of grant applicants, reviews the grant applications and staff summaries and recommendations.
 5. Members of the Executive Committee who have applications under consideration abstain from review and recommendations on their own grant applications but do review and make recommendations on the applications of other literacy councils.
 6. The Executive Committee makes recommendations to the Board of Directors on the grant applications.
 7. The Board of Directors usually accepts the recommendations of the Executive Committee after discussion.
 8. Once the grants are awarded, the funds are distributed quarterly, and quarterly grants reports must be submitted in proper form. Failure to submit quarterly reports results in loss of additional distributions until the reports are received.
Based on these facts, you have asked me to answer the following questions:
 1. Does the current board structure and the role of the board in the grant process violate any state statute or state rules and regulations?
 2. Under the current board structure, do board members with formal ties to applicant councils have a conflict of interest in: (a) determining the grant application process and formulas, especially if a member declines to vote for a formula revision that may reduce funds to the member's own council; (b) taking action on the member's own grant application; and (c) taking action on the overall budget of ALC, which includes the individual grant allocations?
 3. If these members do have a conflict of interest, can the conflict be resolved by restructuring the board to prohibit service by any person who is a current or recent officer, director, staff member or contractor of a[n] applicant council?
 4. In the interim period, the board has established an ad hoc grants committee whose membership includes no board members. Pending receipt of this opinion, does the use of a board committee constitute a problem in the determination of allocations for the upcoming fiscal year? Additionally, will the approval of the committee's recommendations by the full board in any way taint the allocations for the upcoming year?
RESPONSE
In my opinion, the answer to your first question is "no," although the board structure and mode of operation might be subject to challenge as creating a real or apparent conflict of interests inconsistent with the board's fiduciary obligations to ALC. With respect to your second question, if an ALC director's "formal ties" to an applicant council are such as to create an obligation to the potential grantee that might conflict with his fiduciary obligations to ALC, a clear conflict of interests exists. Determining whether this is the case will involve making a factual inquiry beyond the scope of my duties. However, I will opine that there is a potential for conflict in all three hypotheticals posed in your question. In my opinion, the answer to your third question is, in all likelihood, "yes." With respect to your fourth question, I believe using an ad hoc grants committee to make grant determinations will be acceptable if five conditions are met: (1) the committee's responsibilities are recognized as fiduciary in nature; (2) the committee's decisions are binding on the board; (3) the delegation of this decision-making power to the committee is not prohibited by ALC's articles of incorporation or bylaws; (4) the committee is obligated "to work with the Department of Human Services in providing transitional employment assistance services," as dictated by A.C.A. § 20-76-102; and (5) the committee members are in no way bound by ties of loyalty to any of the applicant councils. Determining whether these conditions are met will involve making a factual inquiry beyond the scope of my duties.
Question 1: Does the current board structure and the role of the board inthe grant process violate any state statute or state rules andregulations?
No statute or regulation expressly prohibits the board of a private nonprofit corporation like ALC from being structured and functioning in the manner you have described in your request. Various statutes address what might constitute a conflict of interests for a public official.See, e.g., A.C.A. §§ 14-14-1202(a); 21-8-304; Ark. Op. Att'y Gen. No.99-449. There is further a common-law proscription against a public officer engaging in activities that would create a conflict of interests. See, e.g., Ark. Op. Att'y Gen. No. 2000-072 and cases cited therein. However, in my opinion neither these statutes nor the common-law proscription apply in this case, since the ALC board members are not public officers but rather directors of a private corporation. The pertinent question, then, would appear to be not whether the board's structure and conduct create a statutory or common-law conflict of interests, but rather whether they put those ALC board members who are likewise officers or board members of potential grantees in an actual or potential conflict that would amount to a breach of their fiduciary duties to one organization or the other.
I sense in your request some uneasiness as to whether ALC might have a public or quasi-public character. The facts as you have reported them and I have been able to discern certainly reflect that ALC's mission and operations are strongly interwoven with public activities. You indicate that ALC was incorporated in 1971 as a volunteer organization to provide assistance to its member local literacy councils. You report that state funding became available through GCAL in the 1980's. However, as you note in your request, GCAL was abolished and transferred to DWE in 1997.[1]
My research reflects that the state appropriation for literacy grants and operating expenses currently in effect is contained in Section 18 ofAct 1400 of 1999, which authorizes payment to "the Department of Workforce Education — Governor's Commission on Adult Literacy" of $750,000 annually for "Grants to Literacy Councils" and various amounts for salaries and expenses. Although ALC is never expressly mentioned in this appropriation, I gather from your request that ALC, not GCAL, is the ultimate recipient of these appropriations through some variety of grant or contractual relationship with DWE, the direct recipient. Finally, I should note that A.C.A. § 20-76-102, captioned "Coordination of state agency service delivery," provides in pertinent part:
 (c) To ensure that all available state government resources are used to help transitional employment assistance recipients make the transition from welfare to work, each of the following state agencies and organizations shall also be required to work with the Department of Human Services in providing transitional employment assistance services:
* * *
(10) The Arkansas Literacy Council, Inc.;
(11) The Department of Workforce Education; and
 (12) Other state agencies as directed by the Governor or as directed by the General Assembly.
Despite its ultimate state funding and inclusion among the category of "state agencies and organizations" under the statute just recited, I do not believe ALC, which, as a private nonprofit corporation, is by law and by definition a private entity, can be considered subject to statutory and common-law conflict-of-interests proscriptions that expressly apply only to public officers. Although you indicate in your request that you have enclosed ALC's bylaws, you apparently inadvertently failed to include these in the materials provided. However, I assume these authorize the standard activities undertaken by many private nonprofit corporations, including entering into contracts and accepting grants. You have not provided me the documents that reflect the precise relationship between ALC and the state, but given ALC's organization as a private nonprofit corporation, I assume these reflect a standard relationship between the government and a private entity. In short, I do not believe any state statute or regulation controls how the ALC board should be structured or how it should operate, subject only to the condition that the board cooperate with DHS, as dictated in A.C.A. § 20-76-102.
Question 2: Under the current board structure, do board members withformal ties to applicant councils have a conflict of interest in: (a)determining the grant application process and formulas, especially if amember declines to vote for a formula revision that may reduce funds tothe member's own council; (b) taking action on the member's own grantapplication; and (c) taking action on the overall budget of ALC, whichincludes the individual grant allocations?
Although your questions raise certain issues of fact I am neither equipped nor authorized to address, I can outline what I think should be the nature of this factual inquiry. The underlying factual question with respect to each ALC board member will be whether his "formal ties" to an "applicant council" create an obligation to the applicant council that might conflict with his obligations to act only in a fiduciary capacity as an ALC director. Black's Law Dictionary defines the term "fiduciary capacity" as follows:
 One is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity," when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part. The term is nor restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer.
Black's Law Dictionary (6th ed. 1990) (emphasis added). Black's further describes a "fiduciary duty" as "the highest standard of duty implied by law." Id.
In my opinion, if an ALC board member owes a fiduciary duty to both ALC and an applicant council, conflicts of interests might arise in any of the three hypotheticals set forth in your question, with the probability of a conflict being greatest in the second. With respect to the first — viz., determining the grant application process and formulas — a member is obviously obliged to be scrupulously impartial as an ALC director, whereas he is just as obviously obliged to be scrupulously partial to a particular applicant as a member of its board. However, it is theoretically possible for a member to vote for an impartial grant formula without violating his fiduciary duty to a particular applicant, so long as he genuinely believes doing so would benefit the applicant by foreclosing other applicants from potentially obtaining some unfair advantage. Determining whether the director has breached his fiduciary duty will involve an intense factual inquiry I cannot and may not conduct. I can and will opine, however, that simultaneously serving on the boards of a grantor and an applicant council creates a significant potential conflict of interests.
The realization of that potential is illustrated by the example you pose of an ALC director declining to vote for a formula revision that might reduce funds to an applicant council on whose board he serves. Under the right set of facts, I believe a finder of fact might well conclude that such conduct reflects an admirable exercise of fiduciary responsibility with respect to the applicant council while at the same time constituting an inexcusable failure to exercise his fiduciary responsibility to participate in formulating ALC policy.
The example you pose in your first hypothetical is merely a subtype of your second hypothetical — the case of an ALC director taking action on the application of a council on whose board he serves — and a similar analysis applies. So long as the action serves the interests of both the ALC and the applicant, one might argue that there is no actual conflict. However, even that conclusion strikes me as suspect, since the director would be bound by his fiduciary obligation to the applicant to promote the application without weighing its merits from the ALC's perspective. This in itself would constitute a breach of the director's fiduciary obligations to the ALC.
I see less potential for conflict in your third hypothetical — viz., when a dual director takes action on the overall budget of ALC, which includes the individual grant allocations. If I understand your hypothetical, your question concerns action on such issues as the number of grants to be awarded from the money received from DWE. Although it would appear that such general decisions, which do not involve deciding who in particular will receive grants, could not be influenced by a director's dual service, under the right circumstances the general availability of grants might favor one applicant over another. Again, to determine whether a conflict exists in such a situation, one must examine the facts.
Question 3: If these members do have a conflict of interest, can theconflict be resolved by restructuring the board to prohibit service byany person who is a current or recent officer, director, staff member orcontractor of a[n] applicant council?
In my opinion, in all likelihood, "yes." As stated, your question suggests that no remaining member of the ALC board would have ties to an applicant council that would create divided loyalties of the sort discussed above. If so, I believe any real or potential conflict will have been resolved.
Question 4: In the interim period, the board has established an ad hocgrants committee whose membership includes no board members. Pendingreceipt of this opinion, does the use of a board committee constitute aproblem in the determination of allocations for the upcoming fiscal year?Additionally, will the approval of the committee's recommendations by thefull board in any way taint the allocations for the upcoming year?
In my opinion, using an ad hoc grants committee to make grant determinations will be acceptable if five conditions are met: (1) the committee's responsibilities are recognized as fiduciary in nature; (2) the committee's decisions are binding on the board; (3) the delegation of this decision-making power to the committee is not prohibited by ALC's articles of incorporation or bylaws; (4) the committee is obligated "to work with the Department of Human Services in providing transitional employment assistance services," as dictated by A.C.A. § 20-76-102; and (5) the committee members are in no way bound by ties of loyalty to any of the applicant councils.
Determining whether these conditions have been met will involve a consideration of facts not before me and beyond my authority to address. Among the factual questions to be considered is whether the delegation of final grant-issuing authority to a committee would mark an abrogation of the board's basic duties under its charter documents. However, I can opine that so long as the ultimate decision-making power rests with the board as currently constituted, the mere existence of an advisory committee will not avoid the problems discussed above.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] See Act 803 of 1997.